UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT MENGLE individually and on
behalf of others similarly situated,

　　　　　Plaintiff,

vs.                          Case No.  2:09-cv-46-FtM-29SPC

MITCHELL  D.  GOLDSMITH,  ESQUIRE;
SHEFSKY & FROELICH, LTD. an Illinois
corporation, jointly and severally,

　　　　　Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to
Dismiss Plaintiff's First Amended Complaint and Incorporated
Memorandum of Law (Doc. #38) filed on May 3, 2010.  Plaintiff filed
an amended Response (Doc. #43) on January 5, 2011.  In their motion
to dismiss, defendants argue that the Complaint fails to set forth
facts specific to Mengle to support a claim for legal malpractice,
that personal jurisdiction is lacking, and that venue is improper.
For the reasons set forth below, the Court will grant the motion to
dismiss, with leave to file a second amended complaint.

**I.**

Plaintiff Robert Mengle (plaintiff or Mengle) filed a First
Amended Class Action Complaint (Complaint) (Doc. #31) asserting
claims of legal malpractice or, in the alternative professional
negligence, against Defendants Mitchell D. Goldsmith, Esquire
(Goldsmith) and the law firm of Shefsky & Froelich, Ltd.  At issue

are six commercial real estate projects promoted by non-party Samir Cabrera (Cabrera) and six Florida limited liability companies or limited partnerships created by Cabrera:  Samir Cabrera, 13701 Fiddlesticks, LLC; Samir Cabrera, 13800 Fiddlesticks, LLC; Samir Cabrera, Daniels View, LLC; Samir Cabrera, Evans-Fowler, Ltd.; Samir Cabrera, 8930 Laredo Ave, LLC; and Samir Cabrera, 1721 Target Ct, Ltd. (the Cabrera Projects).  (Id. at ¶¶ 10-15.)  Each project was alleged to have been planned, organized and created by Cabrera. (Id.)  The defendants are alleged to have participated in the creation of each project "by performing legal services for the entity and its members."  (Id.)  Cabrera obtained investors who invested over $11 million in the Cabrera Projects and an additional project at 1693 Baseline Court.  (Id. at ¶16.)  All the projects were marketed to investors on the premise that Cabrera was to manage the companies and obtain development orders, entitlement, building permits, and construction financing, and construct commercial developments on the properties.  As of the date of the Complaint, none of the proposed development were ever completed, and all of the real estate has either been sold at a loss or foreclosed upon.  (Id. at ¶19.)

The Complaint alleges that defendants provided legal services for each of the projects, and were tasked to draft the operating agreements, term sheets, and subscription agreements.  Plaintiff alleges that none of the documents prepared by defendants were

properly executed or in accordance with state or federal law. Further, defendants did not disclose prior "flips" of some of the properties to the investors prior to their investments or the closings, and failed to provide plaintiffs with proper operating agreements, term sheets, and subscription agreements for any of the projects, and failed to acquire executed operating agreements, term sheets and subscription agreements.  (Doc. #31, ¶¶ 21-22.)

Count I of the Complaint is for legal malpractice.  Mengle alleges that "plaintiffs" employed defendants and entered into an enforceable contract with defendants, whereby, in consideration of "plaintiffs'" payment of large sums of money to defendants, defendants would timely and properly execute all documents necessary to enable plaintiffs to earn a profit from the purchase and subsequent sale of the properties and perform all other legal actions necessary to accomplish plaintiffs' investment goals. Alternatively, plaintiffs allege that they were third party beneficiaries of defendants' legal services. (Id. at ¶36.)  Mengle alleges that defendants breached their duty to plaintiffs to act with a reasonable degree of care, skill and dispatch by failing to disclose the "flips", failing to act in the best interest of plaintiffs, failing to provide plaintiffs with the proper documentation, and failing to perform all other necessary legal actions. (Id. at ¶¶ 37-38.) Count II is a duplicative claim and

pled in the alternative to Count I, for professional negligence. (Id. at ¶¶ 40-48.)

## II.

At the very least, the Complaint fails to state a claim upon which relief may be granted and fails to set forth personal jurisdiction as to either defendant.  The Complaint also fails to allege that the only named plaintiff, Robert Mengle, has standing to sue as to all the Cabrera Projects.  Because plaintiff may, or may not, be able to file an amended complaint containing proper allegations of a claim and jurisdiction, the Court will dismiss the current complaint without prejudice and with leave to file a second amended complaint.

## A.  Personal Jurisdiction

Personal jurisdiction is a restriction on judicial power as a matter of individual liberty, and "a party may insist that the limitation be observed, or he may forgo that right, effectively consenting to the court's exercise of adjudicatory authority." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999).  Unless waived or forfeited[1], personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication."  Id. at 584 (citation and internal quotation marks omitted).

---

[1] Insurance Corp. Of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-04 (1982).

The existence of personal jurisdiction is a question of law. Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1242, 1257 (11th Cir. 2010); Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009). "A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008).

Plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). A prima facie case is established if plaintiff alleges enough facts to withstand a motion for directed verdict or judgment as a matter of law. PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 810 (11th Cir. 2010); SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997). If defendant challenges jurisdiction by submitting affidavit evidence making a specific factual denial based on personal knowledge, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. Mazer, 556 F.3d at 1274. Plaintiff bears the ultimate burden of establishing that personal jurisdiction is present. Oldfield, 558 F.3d at 1217. "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must

construe all reasonable inferences in favor of the plaintiff." Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). "If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists." PVC Windoors, 598 F.3d at 810.

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. [ ] When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." Diamond Crystal Brands, 593 F.3d at 1257-58 (internal citations and quotation marks omitted). The Court must determine the first step before proceeding to the second. PVC Windoors, 598 F.3d at 807-08.

The reach of the Florida long arm statute is a question of Florida law. Mazer, 556 F.3d at 1274. "A Florida court conducts a two-step inquiry when determining whether jurisdiction under Florida's long-arm statute is proper in a given case. Initially, it must determine whether the complaint alleges jurisdictional facts sufficient to invoke the statute. If so, the court must then examine whether the defendant has sufficient 'minimum contacts' with Florida in order to satisfy due process requirements." Canale

v. Rubin, 20 So. 3d 463, 465 (Fla. 2d DCA 2009)(citing Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So. 2d 582, 584 (Fla. 2000)).  The due process analysis itself involves a two-part inquiry in which the Court first considers whether defendant engaged in minimum contacts with the state of Florida, then considers whether the exercise of personal jurisdiction over defendant would offend traditional notions of fair play and substantial justice. Madara v. Hall, 916 F.2d 1510, 1515-16 (11th Cir. 1990).

### (1) General Jurisdiction

Plaintiff alleges that by performing legal services for Cabrera's entities, which involved the investment in and ultimate sale of properties in Florida, defendants have engaged in substantial activities within the State of Florida.  (Doc. #31, ¶3.)

Florida's long-arm statute provides in part: "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."  Fla. Stat. § 48.193(2).  "The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment."  Fraser v. Smith, 594 F.3d 842, 846 (11th Cir. 2010).  "In order to establish that [defendant] was

engaged in substantial and not isolated activity in Florida, the activities of [defendant] must be considered collectively and show a general course of business activity in the State for pecuniary benefit." Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1361 (11th Cir. 2006)(quoting Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996)).

Here, Mengle alleges that defendants provided legal advice and drafted relevant documentation for the Cabrera Projects. Defendant Goldsmith submitted an affidavit stating that he met Cabrera in Chicago, Shefsky & Froelich was retained in Chicago, and he almost exclusively worked on these matters from his office in Chicago. (Doc. #38-2, ¶11.) Further, the Goldsmith affidavit states that he does not routinely conduct business in Florida and only went to Florida for one meeting. (Id. at ¶12.) Because the facts alleged in the Complaint do not show a general course of business activity in the State of Florida nor refute the affidavit of Goldsmith, the Court finds that Mengle has not established general personal jurisdiction as to either defendant.

**(2) Specific Jurisdiction**

The Complaint alleges that by drafting legal documents that facilitated the purchase and sale of properties in Florida, defendants have engaged in a business venture in Florida. Additionally, plaintiffs allege that by negligently failing to draft correctly, or in a timely manner, all of the relevant

documentation, defendants committed legal malpractice and/or professional negligence in Florida, which are tortious acts. (Doc. #31, ¶3.)

The specific jurisdiction provision of the Florida long-arm statute provides that a defendant "submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: (a) operating, conducting, engaging in, or carrying on a business or business venture in this state, or having an office or agency in the state. . . . [or] (b) [c]ommitting a tortious act within this state. . . ." Fla. Stat. § 48.193(1)(a), (b). Thus, specific jurisdiction refers to jurisdiction over causes of action that arise from or are related to the party's actions within the forum. PVC Windoors, 598 F.3d at 808. Florida law requires, however, "before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action." Id. (citations and internal quotation marks omitted). The Court will therefore first examine the sufficiency of the counts as pled.

Plaintiff alleges causes of action for legal malpractice, or in the alternative, a cause of action for professional negligence. The basis for both claims is that Mengle either had a contractual relationship with the defendants, or that he was the intended third

party beneficiary of the defendants' relationship with the Cabrera entities.  The parties dispute whether the Complaint sets forth sufficient facts to support a claim for legal malpractice/professional negligence as to plaintiff Mengle.

A professional negligence cause of action, of course, sounds in negligence.  Four elements are necessary to sustain a negligence claim:

> 1. A duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks.
>
> 2. A failure on the defendant's part to conform to the standard required: a breach of the duty . . .
>
> 3. A reasonably close causal connection between the conduct and the resulting injury, commonly referred to as "legal cause" or "proximate cause," and which includes the notion of cause in fact.
>
> 4. Actual loss or damage.

Curd v. Mosaic Fertilizer, LLC, 39 So. 3d 1216, 1227 (Fla. 2010) (citing Clay Elec. Coop., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003)).  "Under Florida law, the question of whether a duty is owed is linked to the concept of foreseeability.  We have held that duties may arise from four general sources: (1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of a case."  Id. at 1227-28.

> The fourth category encompasses that class of cases in which the duty arises because of a foreseeable zone of risk arising from the acts of the defendant. . . . The statute books and case law . . . are not required to catalog and expressly proscribe every conceivable risk in order for it to give rise to a duty of care. Rather, each defendant who creates a risk is required to exercise prudent foresight whenever others may be injured as a result. This requirement of reasonable, general foresight is the core of the duty element.

Id. at 1228 (citation and internal quotation marks omitted). "A legal malpractice claim, which is the designated professional negligence alleged in the complaint before us, has three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) the attorney's negligence [as] the proximate cause of the client's loss." Rocco v. Glenn, Rasmussen, Fogarty & Hooker, P.A., 32 So. 3d 111, 116 (Fla. 2d DCA 2009) (citation and internal quotation marks omitted); see also Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1281 (11th Cir. 2004).

In Florida, the general rule is that an attorney's liability for negligence in the performance of his or her professional duties is limited to clients with whom the attorney shares privity of contract. Espinosa v. Sparber, Shevin, Shapo, Rosen and Heilbronner, 612 So. 2d 1378, 1379 (Fla. 1993); Moss v. Zafiris, Inc., 524 So. 2d 1010, 1011 (Fla. 1988); Angel, Cohen & Rogovin v. Oberon Inv., N.V., 512 So. 2d 192, 194 (Fla. 1987); Hunt Ridge at Tall Pines, Inc. v. Hall, 766 So. 2d 399, 400 (Fla. 2d DCA 2000); Littell v. Law Firm of Trinkle, Moody, Swanson, Byrd and Colton, 345 F. App'x 415, 418 (11th Cir. 2009). In this context, "privity"

-11-

describes the relationship of persons who are parties to a contract. <u>Espinosa</u>, 612 So. 2d at 1379-80; <u>Brennan v. Ruffner</u>, 640 So. 2d 143, 145 (Fla. 4th DCA 1994).

> Establishment of the attorney-client relationship-and thus the attachment of the concomitant rights and duties of each side to the relationship-does not require a written agreement or evidence that fees have been paid or agreed upon.  The Florida Supreme Court has said that the test for an attorney-client relationship "is a subjective one and hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice.  However, this subjective belief must . . . be a reasonable one."

<u>Mansur v. Podhurst Orseck, P.A.</u>, 994 So. 2d 435, 438 (Fla. 3d DCA 2008)(footnote and citations omitted).  However, "[t]he subjective belief test is only applied after a putative client consults with an attorney, and is used to emphasize that, following a consultation, it is the belief of the putative client and not the lawyer's actions that determines whether a lawyer-client relationship has developed."   <u>Jackson</u>, 372 F.3d at 1281 n.29 (citing <u>Dean v. Dean</u>, 607 So. 2d 494, 496-97 (Fla. 4th DCA 1992)). "[T]he test Florida courts have used to determine if an attorney-client relationship exists is: (1) the putative client consults with an attorney and, subsequently, (2) the client has a reasonable subjective belief that he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice."   <u>In re Lentek Int'l, Inc.</u>, 346 F. App'x 430, 433 (11th Cir. 2009)(citations and internal quotation marks omitted). Additionally, "it is not sufficient merely to show that an

attorney-client relationship existed between the parties, it is essential that the plaintiff show that the relationship existed with respect to the acts or omissions upon which the malpractice claim is based." Lane v. Cold, 882 So. 2d 436, 438 (Fla. 1st DCA 2004).

The only exception to the rule requiring privity involves those instances where it is the apparent intent of the client to benefit a third party. Angel, 512 So. 2d at 194; Hewko v. Genovese, 739 So. 2d 1189, 1191 (Fla. 4th DCA 1999); Brennan, 640 So. 2d at 145. Drafting a will is an example of legal work with an intended third party beneficiary, but the exception is not limited to such legal work. Rushing v. Bosse, 652 So. 2d 869, 873 (Fla. 4th DCA 1995); Kinney v. Shinholser, 663 So. 2d 643, 646 (Fla. 5th DCA 1995)(citing cases); Greenberg v. Mahoney Adams & Criser, P.A., 614 So. 2d 604, 605 (Fla. 1st DCA 1993). This intended third party beneficiary exception has not been expanded to include incidental third party beneficiaries of an attorney's work. Angel, 512 So. 2d at 194. Thus, "[t]o bring a legal malpractice action, the plaintiff must either be in privity with the attorney, wherein one party has a direct obligation to another, or, alternatively, the plaintiff must be an intended third-party beneficiary." Espinosa, 612 So. 2d at 1380; Littell v. Law Firm of Trinkle, Moody, Swanson, Byrd and Colton, 345 F. App'x 415, 418 (11th Cir. 2009).

Additionally, representing an entity does not establish an attorney-client relationship with members of the entity, or vice versa. <u>Gonzalez v. Chillura</u>, 892 So. 2d 1075, 1078 (Fla. 2d DCA 2004)(representation of shareholder of corporation did not place attorney in attorney-client relationship with the corporation); <u>Chaiken v. Lewis</u>, 754 So. 2d 118, 118 (Fla. 3d DCA 2000)(representation of partnership does not place attorney in attorney-client relationship with the individual partners); <u>Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.</u>, 742 So. 2d 381, 389 (Fla. 4th DCA 1999)(representation of corporation does not place attorney in attorney-client relationship with shareholders of corporation); <u>Brennan v. Ruffner</u>, 640 So. 2d 143, 145-46 (Fla. 4th DCA 1994)(representation of closely held corporation does not place attorney in attorney-client relationship with shareholders of corporation).

In the instant case, Mengle asserts in a conclusory fashion that "Plaintiffs employed Defendants and entered into an enforceable contract with them, . . . Or, in the alternative, Plaintiffs were the intended third-party beneficiaries of Defendants' legal services." (Doc. #31, ¶36.) Mengle makes no allegation as to what <u>he</u> did in relation to the defendants or what <u>his</u> relationship to the defendants was, and conclusory allegations regarding "Plaintiffs" are simply insufficient. At this stage of the proceedings, there is only one plaintiff. Further, Mengle

fails to plead any, let alone sufficient, facts to show that he was an intended third-party beneficiary of Goldsmith and Shefsky & Froelich, Ltd.'s legal services to the Cabrera entities.  The Court concludes that Mengle has not sufficiently pled a cause of action as to either legal malpractice or professional negligence. Therefore Counts I and II are beyond the reach of Florida's long arm statute.  See PVC Windoors, 598 F.3d at 809.

Because the allegations in the Complaint fail to adequately state a claim, the Court need not proceed further with the specific personal jurisdiction analysis.  The Complaint fails to properly allege specific personal jurisdiction if it fails to state a claim. The Court will dismiss the Complaint without prejudice but will grant leave to file a second amended complaint.  28 U.S.C. § 1653.

Accordingly, it is now

**ORDERED**:

1.  Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. #38) is **GRANTED** to the extent that the First Amended Class Action Complaint (Doc. #31) is **dismissed without prejudice**.

2.  Plaintiff may file a second amended complaint within **TWENTY-ONE (21) DAYS** of the date of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this __21st__ day of March, 2011.

JOHN E. STEELE
United States District Judge